AO 108 (Rev. 06/09) Application for a Warrant to Seize Property Subject to Forfeiture

# UNITED STATES DISTRICT COURT
for the
Middle District of Louisiana

In the Matter of the Seizure of )
*(Briefly describe the property to be seized)* )
www.miami24k.com ) Case No.  22-mj- 27
Controlled by VeriSign, Inc. )
)

**APPLICATION FOR A WARRANT
TO SEIZE PROPERTY SUBJECT TO FORFEITURE**

I, a federal law enforcement officer or attorney for the government, request a seizure warrant and state under penalty of perjury that I have reason to believe that the following property in the ___Eastern___ District of ___Virginia___ is subject to forfeiture to the United States of America under ___18___ U.S.C. § 1029(c)(1)(C) ,  *describe the property:*

www.miami24k.com controlled by VeriSign, Inc.

The application is based on these facts:

Please see attached affidavit.

☑ Continued on the attached sheet.

DARIUSH J VOLLENWEIDER
Digitally signed by DARIUSH J VOLLENWEIDER
Date: 2022.03.31 17:21:15 -05'00'

*Applicant's signature*

SA Dariush Vollenweider, Dept. of Homeland Security
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by ___telephone___ (specify reliable electronic means).

Date: 4/1/2022

*Judge's signature*

City and state: Baton Rouge, Louisiana                Richard L. Bourgeois, Jr., Magistrate Judge
*Printed name and title*

## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| IN THE MATTER OF THE SEZURE OF www.miami24k.com CONTROLLED BY VERISIGN, INC.; AND www.miami.gift CONTROLLED BY UNI NAMING AND REGISTRY CORP. | : MAGISTRATE NO. 22-mj- 27 : : **UNDER SEAL** : : |

### AFFIDAVIT IN SUPPORT OF APPLICATION
### FOR SEIZURE WARRANTS

I, Dariush Vollenweider, being duly sworn, state the following:

### Affiant's Background

1.  I am a Special Agent with the Department of Homeland Security, Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI) assigned to the Resident Agent in Charge (RAC) office in Baton Rouge, Louisiana. I have been employed as such since March 2010. I received 22 weeks of specialized training at the Federal Law Enforcement Training Center in Glynco, Georgia. This specialized training covered all aspects of criminal investigations. In my law enforcement career, I have worked on cases involving a variety of criminal offenses, and over the past two years, I have focused on investigating criminal violations that occur on the dark web and clear web that include use of internet protocol (IP) addresses.

2.  Because this affidavit is being submitted for the limited purpose of establishing probable cause for the issuance of two seizure warrants for specified domain names, it does not include all the facts that I have learned during the investigation. Where the contents of documents and the actions and statements of others are reported herein, they are, unless otherwise indicated, reported only as necessary to establish probable cause for the proposed seizures.

3.  As set forth below, I believe that probable cause exists that the SUBJECT DOMAIN NAME #1, www.miami24k.com, and SUBJECT DOMAIN NAME #2,

www.miami.gift, are properties used, or intended to be used, to commit or facilitate violations of 18 U.S.C. § 1029(a)(1) (trafficking counterfeit access devices) and 18 U.S.C. § 1029(a)(6) (unauthorized solicitation of access devices), among other potential violations, and, therefore, are subject to seizure and forfeiture pursuant to 18 U.S.C. § 1029(c)(1)(C). I make this affidavit for two warrants to seize the SUBJECT DOMAIN NAME #1, www.miami24k.com, and the SUBJECT DOMAIN NAME #2, www.miami.gift.[1]

4. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrants and does not set forth all of my knowledge about this matter.

5. The procedure by which the government intends to facilitate the seizure of the two domain names is described in paragraphs in 42-44.

## Purpose of the Affidavit

I make this affidavit in support of the Government's application for two seizure warrants to seize the following domain names:

www.miami24k.com ("SUBJECT DOMAIN NAME #1")
www.miami.gift ("SUBJECT DOMAIN NAME #2")

6. As set forth herein, I believe that probable cause exists to conclude that the two subject domain names were used or were intended to be used, to commit or facilitate violations of 18 U.S.C. § 1029, and are subject to forfeiture, and that sufficient grounds exist for the issuance of seizure warrants.

## Statutory Authority for Seizures

**18 U.S.C. § 1029**– Access Device Fraud

(a) Whoever-
   (1) Knowingly and with intent to defraud produces, uses, or traffics in one or more counterfeit access devices;

---

[1] The subject of this investigation also controls a third domain name, "giftcards.gg," which is also being used to commit criminal violations, but this affidavit focuses on the two subject domain names.

. . .

(6) without the authorization of the issuer of the access device, knowingly and with intent to defraud solicits a person for the purpose of (A) offering an access device; or (B) selling information regarding or an application to obtain an access device . . . .

(c)(1) The punishment for an offense under subsection (a) of this section is . . . (C) in either case, forfeiture to the United States of any personal property used or intended to be used to commit the offense.

(2) The forfeiture of property under this section, including any seizure and disposition of the property and any related administrative and judicial proceeding, shall be governed by section 413 of the Controlled Substances Act . . . .

**21 U.S.C. § 853(f)** – Warrant of Seizure

The Government may request the issuance of a warrant authorizing the seizure of property subject to forfeiture under this section in the same manner as provided for a search warrant. If the court determines that there is probable cause to believe that the property to be seized would, in the event of conviction, be subject to forfeiture and that an order under subsection (e) may not be sufficient to assure the availability of the property for forfeiture, the court shall issue a warrant authorizing the seizure of such property.

**21 U.S.C. § 853(l)** - Jurisdiction to enter orders

The district courts of the United States shall have jurisdiction to enter orders as provided in this section without regard to the location of any property which may be subject to forfeiture under this section or which has been ordered forfeited under this section.

7. I believe that seizure warrants for the SUBJECT DOMAIN NAME #1 and SUBJECT DOMAIN NAME #2 would secure the domain names, and that a restraining order or protective order would not be sufficient. By seizing these two domain names and redirecting incoming traffic to another website, the Government will prevent third parties from acquiring the name and using the name to commit additional crimes. Furthermore, seizure of these domain names will prevent third parties from continuing to access the websites in continuation of the criminal activity.

3

**Technical Background**

8. Based on my training and experience and information learned from others, I am familiar with the technical terms described below.

9. <u>Internet Protocol Address</u>: An Internet Protocol address (IP address) is a unique numeric address used by computers on the Internet. An IP Address is a series of four numbers, each in the range 0-255, separated by periods (<u>e.g.</u>, 121.56.97.178). Every computer attached to the Internet must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. An IP address acts much like a home or business street address -- it enables computers connected to the Internet to properly route traffic to each other. The assignment of IP addresses to computers connected to the Internet is controlled by ISPs.

10. <u>Domain Name</u>: A domain name is a simple, easy-to-remember way for humans to identify computers on the Internet, using a series of characters (<u>e.g.</u>, letters, numbers, or other characters) that correspond with a particular IP address. For example, "usdoj.gov" and "cnn.com" are domain names.

11. <u>Domain Name System</u>: The domain name system ("DNS") is, among other things, a hierarchical convention for domain names. Domain names are composed of one or more parts, or "labels," that are delimited by periods, such as "example.com." The hierarchy of domains descends from right to left; each label to the left specifies a subdivision, or subdomain, of the domain on the right. The right-most label conveys the "top-level" domain. For example, in the domain name "example.com," the ".com" is the top-level domain, and "example" is the second-level domain.

12. <u>Domain Name Servers</u>: DNS servers are computers connected to the Internet that convert, or resolve, domain names into Internet Protocol addresses. For each top-level domain (such as ".com"), there is a single company, called a "registry," that determines which second-level domain resolves to which IP address. In other words, the registry manages top-level domain names. The registry for the ".com" and ".net" top-level domains is VeriSign, Inc., which is located at 12061 Bluemont Way, Reston, Virginia 20190.

13. <u>Registrar & Registrant</u>: Domain names may be purchased through a registrar, which acts as the intermediary between the registry (the company that manages the top-level domain names) and the "registrant," the individual or business that purchases, or registers, a domain name. Registrants control the IP address, and thus the computer, to which their domain name resolves. Thus, a registrant may easily move a domain name to another computer anywhere in the world. Typically, a registrar will provide a registrant with the ability to change the IP address to which a particular IP address resolves through an online interface. Registrars typically maintain customer and billing information about the registrants who used their domain name registration services.

14. <u>Whois</u>: A "Whois" search provides publicly available information as to which entity is responsible for a particular IP address or domain name. A Whois record for a particular IP address or domain name will list a range of IP addresses that that IP address falls within and identify the entity responsible for that IP address range and domain name. For example, a Whois record for the domain name XYZ.COM might list an IP address range of 12.345.67.0 through 12.345.67.99 and list Company ABC as the responsible entity. In this example, Company ABC would be responsible for the domain name XYZ.COM and IP addresses 12.345.67.0 through 12.345.67.99.

**Probable Cause for Seizures**

*Background*

15.     This application arises from an investigation into Richard VERRET, who owns and operates websites that he uses to advertise and sell gift card account numbers for restaurants, grocery stores, entertainment venues, and other retail business chains. The investigation to date indicates that VERRET obtains the account numbers by fraud, without the knowledge, consent or authorization of the gift cards' issuers or actual owners.

16.     In May of 2019, HSI agents received information suggesting that an individual in Canada was using computer techniques to steal gift card information and then re-sell the information over the internet. According to a confidential witness, VERRET works with computer programmers to create computer "bots" capable of illegally accessing the websites of companies that issue gift cards or stored value cards. The bots attack the websites using "botnets,"[2] which test millions of combinations of gift card numbers and personal identification numbers (or PINs) to try to identify legitimate gift card accounts that contain positive balances. Once VERRET has identified an account with a significant positive balance, he will keep a record of the account number and PIN, and then either (a) create a new, fraudulent gift card containing the stolen account information, and sell the new gift card on-line, (b) sell the stolen account information as raw data, or (c) use the information to make purchases himself.

17.     In a series of interviews with law enforcement agents, the witness described the subject's gift card business and provided agents with communications between him and VERRET that tended to corroborate his statements. For instance, the witness provided agents a copy of a

---

[2] Based on my training, knowledge, and experience, I know that a botnet is a group of computers that are controlled and operated towards a specific purpose, usually without the real owner's knowledge or permission.

message he sent to the subject on January 30, 2019, in which he asked, "Hey can you hook me up with some more massage anvy [sic] when you get the chance?" (The witness was referring to Massage Envy, a U.S.-based massage and skin care chain with several locations in Baton Rouge, Louisiana.) Approximately two minutes later, the subject responded by sending a series of account numbers for valid gift card accounts at Massage Envy.

18. According to the witness, as of early 2019, the subject was operating an online store called the "Lux Gift Card Shop," which was accessed by visiting the website www.giftcards.gg. Agents determined that the store was hosted at the time by a company called "Selly, LLC" ("Selly"), an e-commerce website similar to eBay. As the investigation continued, agents obtained records for the store from Selly. According to the records, in April 2019, Selly banned the user who was operating the "Lux Card Gift Shop" (who, at the time, was identified by the username "luxury187"), based on the company's concerns that the user was engaging in fraud.

19. In May of 2019, posing as the witness, I began communicating with the subject through the same social media applications (namely, Discord and Telegram) that the witness had previously used in his own communications with the subject.

20. On May 30, 2019, acting in an undercover capacity, I sent the subject a message and represented that I had a "bulk buyer" who was interested in purchasing some physical gift cards for Red Wing Shoes, an American footwear company. In a series of communications over the next several weeks, the subject indicated that he would encode twenty-five (25) Red Wing gift cards, each having a value of $100, and he directed me to mail him the blank cards at an address in Quebec, Canada. In late June, the subject and I exchanged numerous messages in which the subject confirmed that he received the cards, provided me with the gift card numbers and balances for the accounts he would use to re-encode the cards, and then confirming that he had mailed the

7

cards back to an address in Louisiana that had been provided to him. Eventually, I received a package (which had been mailed from Quebec) that contained twenty-five access device cards, each of which was programmed to access an authentic Red Wing gift card account.

*Subject Domain Name #1*



22.     Meanwhile, through the investigation, the subject was identified as Richard Verret (DOB 12/5/1981, Canadian Passport No. HP819644), who resides in Quebec, Canada. This is based on (a) statements made by the subject during online communications, (b) text messages sent to and received from the subject, (c) records related to the subject's border crossings, and (d) video recordings of certain transactions made by the subject, among other evidence. However, because

8

this warrant seeks to forfeit property used or intended to be used to commit crimes (as explained in more detail below), I have not set forth a full summary of our investigation into the subject's identity.

23. On July 17, 2019, HSI agents accessed the SUBJECT DOMAIN NAME #1 to conduct an undercover purchase of ten (10) Whataburger gift card numbers. (Whataburger is a fast-food restaurant chain with several hundred locations in Texas and across the United States.) Upon visiting the SUBJECT DOMAIN NAME #1, users are re-directed to a gift card shop located at https://miami.atshop.io, where users can browse from gift cards to dozens of major chain restaurants, entertainment centers, and other retail stores. On July 27, 2019, the agents placed an order for ten Whataburger gift cards, which were advertised as having a value of $5 each; accordingly, ten cards would be worth $50. The website's sales price for all ten cards, however, was $15. Using an undercover e-mail address controlled by HSI, agents completed the purchase and sent payment via PayPal for the gift cards. After placing the order, the undercover e-mail address received an e-mail containing a list of ten Whataburger gift card numbers and the balance ($5) for each account. HSI agents then confirmed with Lyndon D. Richardson, the Enterprise Risk Management Group Director for Whataburger, that all ten account numbers correspond to valid, active Whataburger gift card accounts. Based on details provided by Mr. Richardson (the dates of activation and other details on the gift card numbers), the account numbers appear to have been stolen or obtained by fraud.

24. On July 22, 2019, while in a physical location in Baton Rouge, Louisiana, I accessed the SUBJECT DOMAIN NAME #1 and noted all of the specific stores and gift card values being offered for sale. The stores are arranged alphabetically on the website, and the image below reflects the first row of cards offered for sale:



25.     As of July 22, 2019, the website offered gift cards to more than 100 different restaurant chains and retail locations across the United States, and the site indicated that. Based on the number of gift cards represented to be "in stock" at the time (which totaled more than 1,000), and the face value of each card set, I conservatively estimated that the website had more than $1.1 million in stolen gift card account value advertised for sale at the time.

26.     On August 21, 2019, HSI agents accessed the SUBJECT DOMAIN NAME #1 and conducted another undercover purchase. This time, agents purchased twenty gift cards for Fresh Market, a grocery store chain based in North Carolina with approximately 150 locations across the United States. On the website, the cards had a value of $25 each, and so twenty cards would be worth $500. Through the website, however, HSI was able to purchase all twenty cards for $100. As with the first undercover purchase, after HSI completed the purchase and sent payment, the HSI-controlled e-mail account, which is controlled by the Affiant in Baton Rouge, Louisiana, received an e-mail containing a list of gift card numbers and the balance for each card. HSI then confirmed with Ashley Twichell, a representative from Fresh Market's legal department, that all of the account numbers correspond to valid, active Fresh Market gift card accounts. Based on

10

details provided by Ms. Twichell (specifically, that the accounts were activated between 2005 and 2015 across eight different states), the account numbers appear to have been stolen or obtained by fraud.

27.     In early January 2021, HSI personnel in Baton Rouge, Louisiana, visited the SUBJECT DOMAIN NAME #1 on numerous occasions to confirm that the site was still offering gift cards for sale and to compile a list of the cards and denominations still available. As of January 7, 2021, the website was offering gift cards to more than 350 different restaurant chains and retail locations across the United States. Based on the number of gift cards represented to be available for sale and the face value of each card set, HSI personnel calculated that the website had more than $18.1 million in stolen gift card account value advertised for sale at the time.

28.     In February 2022, HSI personnel visited the SUBJECT DOMAIN NAME #1 on numerous occasions to confirm that the site was still offering gift cards for sale and to compile a list of the cards and denominations still available. As of March 4, 2022, the website was offering gift cards to more than 500 different restaurant chains and retail locations across the United States. Based on the number of gift cards represented to be available for sale and the face value of each card set, HSI personnel calculated that the website had more than $22 million in stolen gift card account value advertised for sale at the time.

29.     A search of publicly-available WHOIS domain name registration records revealed that the www.miami24k.com domain was registered on or about June 6, 2019 through the registrar Tucows Domains, Inc. ("Tucows"), which has its headquarters at 96 Mowat Avenue, Toronto, Ontario, M6K 3M1, Canada. The publicly available WHOIS database does not identify the name of the registrant, and the database indicates that the information has been "redacted for privacy."[3]

---

[3] Interestingly, database identifies the registrant's "country code" – the country where the registrant is purportedly located – as KN, which is an abbreviation for Saint Kitts and Nevis, an island country in the

Tucows allows website owners to keep their contact details private during the registration process. According to the database, accessed on March 25, 2022, the registration remains active and is not scheduled to expire until June 4, 2023.

30. Although the registrar for the SUBJECT DOMAIN NAME #1 is located in Canada, the registry is VeriSign, which, as indicated above, is located in Reston, Virginia, within the United States. In March of 2022, I confirmed with Verisign, through its Senior Corporate Counsel, that serving the requested seizure warrant on VeriSign would be effective in seizing the SUBJECT DOMAIN NAME #1 and redirecting internet traffic from the site.

31. On March 25, 2022, while in a physical location in Baton Rouge, Louisiana, I checked the SUBJECT DOMAIN NAME #1 and confirmed that it still remains active.

*The "GG" Domain Name*

32. As discussed above, as of early 2019, VERRET was reportedly using a second domain name (giftcards.gg) (hereinafter "the GG Domain Name") to sell gift card account numbers. During the initial phase of this investigation, VERRET stopped using the GG domain name and began using the SUBJECT DOMAIN NAME #1.



34. The following day, on April 20, 2020, while acting in an undercover capacity, I sent the subject a message which I asked him when he planned to resume using the GG domain

---

West Indies that, according to Wikipedia, is the smallest sovereign state in the Western Hemisphere by both size and population.

name, and he responded by indicating that the domain was already "working," as shown below:



35.     On March 25, 2022, I accessed the GG domain name. Upon visiting the site and while physically located in Baton Rouge, Louisiana, I was immediately re-directed to the same online gift card shop, located at https://miami.atshop.io, where visitors to the SUBJECT DOMAIN NAME #1 are redirected. After accessing the site through the GG domain name, I verified that the site continued to offer gift cards for sale.

36.     With respect to the GG domain name, the country code, GG, indicates that the domain is Guernsey, an island that is part of the Bailiwick of Guernsey, a self-governing possession of the United Kingdom. Moreover, according to reliable databases, the registrar for the GG domain name is located outside the United States. Accordingly, while the United States does not seek authority to seize the GG domain name through this application, the United States will coordinate with foreign partners in an effort to stop the GG domain name from being used for criminal activity.

*Domain Name of www.miami.gift*

37.     On March 17, 2022, while acting in an undercover capacity in a physical location in Baton Rouge, Louisiana, I noticed the subject advertising a new domain name of www.miami.gift (hereinafter "SUBJECT DOMAIN NAME #2") on one of his Telegram channels as shown below:



38.     On March 17, 2022, while acting in an undercover capacity, I sent the subject a message about the use of the SUBJECT DOMAIN NAME #2. The subject responded and stated that he has had the domain for a while and started to cross promote the SUBJECT DOMAIN NAME #2 in his groups.

39.     On March 23, 2022, while in a physical location in Baton Rouge, Louisiana, I accessed the SUBJECT DOMAIN NAME #2.  Upon visiting the site, I was immediately re-directed to the same online gift card shop, located at https://miami.atshop.io, where visitors to the SUBJECT DOMAIN NAME #1 are redirected.  After accessing the site through the

14

SUBJECT DOMAIN NAME #2, I verified that the site continued to offer gift cards for sale.

40. With respect to the SUBJECT DOMAIN NAME #2, I contacted the Internet Corporation for Assigned Names and Number (ICANN) for details on the registry of the SUBJECT DOMAIN NAME #2. I was informed that the SUBJECT DOMAIN NAME #2 is administered by UNI Naming & Registry Corp., 304 South Jones Blvd., Suite 8099, Las Vegas, Nevada 89107.

41. On March 25, 2022, I contacted UNI Naming & Registry Corp., located in Las Vegas, Nevada, through their contact email. On that same day, I received a response email from Frank Schilling and Shayan Rostam from UNI Naming & Registry Corp. who stated that they would coordinate the takedown of the SUBJECT DOMAIN NAME #2 if a court order is issued.

**Seizure Procedure**

42. Upon execution of the requested seizure warrant for the registry for the top-level domain address, www.miami24k.com, Verisign shall be directed to restrain and lock the SUBJECT DOMAIN NAME #1 pending a forfeiture determination of the right, title, and interest in the SUBJECT DOMAIN NAME #1. This is to ensure that changes to the SUBJECT DOMAIN NAME #1 cannot be made absent court order or, if forfeited to the United States, without prior consultation with ICE HSI. In addition, upon seizure of the SUBJECT DOMAIN NAME #1, VeriSign will be instructed to direct the SUBJECT DOMAIN NAME #1 to a particular IP address, which will display a web page notifying users, including the registrant, that the site has been seized pursuant to a seizure warrant issued by the Court.

43. Upon execution of the requested seizure warrant for the registry for the top-level domain address, www.miami.gift, UNI Naming & Registry Corp. shall be directed to restrain

and lock the SUBJECT DOMAIN NAME #2 pending a forfeiture determination of the right, title, and interest in the SUBJECT DOMAIN NAME #2. This is to ensure that changes to the SUBJECT DOMAIN NAME #2 cannot be made absent court order or, if forfeited to the United States, without prior consultation with ICE HSI. In addition, upon seizure of the SUBJECT DOMAIN NAME #2, UNI Naming & Registry Corp. will be instructed to direct the SUBJECT DOMAIN NAME #2 to a particular IP address, which will display a web page notifying users, including the registrant, that the site has been seized pursuant to a seizure warrant issued by the Court.

44. Upon completion of forfeiture proceedings, if the United States is successful, all domain name records for SUBJECT DOMAIN NAME #1 and SUBJECT DOMAIN NAME #2 will be changed to reflect the transfer of ownership to the United States.

## Conclusion

45. Based on the information contained in this affidavit, I respectfully submit that there is probable cause to believe that SUBJECT DOMAIN NAME #1 and SUBJECT DOMAIN NAME #2 are properties that have been used, or are intended to be used, to commit violations of 18 U.S.C. § 1029(a)(1) (trafficking counterfeit access devices) and 18 U.S.C. § 1029(a)(6) (unauthorized solicitation of access devices). Accordingly, I believe that there are sufficient grounds for the issuance of seizure warrants under Title 18, U.S.C. § 853(f) and, consequently, requests that the SUBJECT DOMAIN NAME #1 and SUBJECT DOMAIN NAME #2 be ordered seized, and that seizure warrants for both SUBJECT DOMAIN NAME #1 and SUBJECT DOMAIN NAME #2 be issued.

46. Because the seizure warrants will be served on VeriSign, which controls the SUBJECT DOMAIN NAME #1, and on UNI Naming & Registry Corp., which controls the

SUBJECT DOMAIN NAME #2, and, that both VeriSign and UNI Naming & Registry Corp. thereafter, at a time convenient to them, will transfer control of these two domain names to the government, there exists reasonable cause to permit the execution of the requested warrants at any time in the day or night.

47. Finally, and in order to protect the ongoing investigation and in consideration that much of the information set forth above is not otherwise publicly available, I respectfully request that this Affidavit be filed and kept under seal until further order of this Court.

Respectfully submitted,

DARIUSH J VOLLENWEIDER
Digitally signed by DARIUSH J VOLLENWEIDER
Date: 2022.03.31 17:16:17 -05'00'

Special Agent Dariush Vollenweider
Department of Homeland Security
Immigration and Customs Enforcement
Homeland Security Investigations

Affidavit submitted by email/.pdf and attested to me as true and accurate by telephone consistent with Federal Rules of Criminal Procedure 4.1 and 41(d)(3) on April 1, 2022.

HONORABLE RICHARD L. BOURGEOIS, JR.
UNITED STATES MAGISTRATE JUDGE
MIDDLE DISTRICT OF LOUISIANA

17